UNITED STATES OF AMERICA,

                        Plaintiff,

v.                                                    Case No. 25-CR-71

ARMONTE COOK

                        Defendant.

DEFENDANT'S SENTENCING MEMORANDUM
AND REQUEST FOR 18 U.S.C. § 3553 SENTENCE

The defendant, Armonte Cook, by and through counsel, Brian P. Dimmer of Racine Defense, hereby submits this 18 U.S.C. § 3553 sentencing memorandum in aid of sentencing.

**REQUEST FOR BELOW-GUIDELINE SENTENCE
PURSUANT TO TITLE 18 U.S.C. §3553(a)(2)**

I.      **Character of the Defendant**

Mr. Cook comes before this court a man of 23 years' age. Here, Mr. Cook's young age is a mitigating factor because it helps explain his extensive criminal history. Mr. Cook himself has commented on the maturity he feels now versus 3 or 4 years ago. At this relatively young age, Mr. Cook has many obvious, rehabilitative needs. As discussed below, Mr. Cooks would benefit from drug abuse treatment, mental health counseling, and educational/vocational training.

Furthermore, given Mr. Cook's relatively young age, his criminal history is over a span of only just a few years. For his Wisconsin State cases, Mr. Cooks was initially given the opportunity to serve terms of probation, but he was revoked in 2024. He is now serving his first term of prison. This Court should consider that the deterrent effect of Mr. Cooks' first term of prison will lessen

1

the need for a greater term of imprisonment in the present case. Mr. Cooks has made clear in his acceptance of responsibility that sitting in prison has had a strong impact on him and his future plans and outlook.

Mr. Cook lost his father in 2020, which is notable because his criminal history ramped up after his death. Obviously, losing a parent is cause for emotional distress, especially for a young adult like Mr. Cook. His father was sick for much of his last years, and this suggests that Mr. Cook's father was unable to be the father-figure that Mr. Cook needed before his eventual death in 2020. Nonetheless, Mr. Cook was close enough to his father to follow him to Arizona where they lived together for several years. Even while dealing with illness, Mr. Cook's father was also very important to Mr. Cook's upbringing because his mother was in and out of jail—she is currently in jail and likely going to prison. Mr. Cook struggled while living in Arizona, however, and this unstable living situation helps explain why Mr. Cook's behavior changed and became risk-taking upon returning to Racine. For example, Mr. Cook's Racine County Circuit Court Case No. 20 CF 892, occurring within the year of his father's passing, started when someone made a derogatory statement about Mr. Cook's father, causing a fight between Mr. Cook and the individual. PSR at ¶ 43.

Mr. Cook undoubtedly would benefit from mental health counseling. In 2021, the same year he was shot and only a year after his father's passing, Mr. Cook was hospitalized after making suicidal comments and cutting himself. Medical records confirmed that Mr. Cook was prescribed an anti-depressant. Mr. Cook admitted the toll his father's death had on his mental state. PSR at ¶ 74. In prison, Mr. Cook has had difficulty sleeping. As we look to Mr. Cook's criminal history, a common theme of anger management needs comes to the surface—all but one case stemmed from a physical altercation. Mr. Cook's need for mental health treatment favors leniency as it is a

rehabilitative need as well as explanation for some of his risk-taking behavior resulting in higher criminal history points/level.

Similarly, Mr. Cook has drug abuse treatment needs, which is a mitigating factor favoring a lesser sentence. The PSR recounts the facts of Racine County Circuit Court Case No. 24 CF 148, where Mr. Cooks was found nonresponsive behind the seat of a vehicle during a welfare check at a gas station. PSR at ¶45. Mr. Cooks was found with Oxycodone pills as well as Xanax—he admitted to taking the latter. He required medical assistance. Similarly, in Racine County Circuit Court Case No. 24 CF 866, Mr. Cook was arrested with Xanax, cocaine on folded $20.00 bills, and marijuana. PSR at ¶46. He eventually admitted to possessing these items with intent to use rather than sell them. Lastly, in Racine County Circuit Court Case No. 24 CF 147, Mr. Cooks was again arrested in possession of marijuana shake, folder money with cocaine residue, and Oxycodone. PSR at ¶52. Further, Mr. Cook was intoxicated (according to medical records) when he was hospitalized after making suicidal comments and cutting himself. These incidents demonstrate Mr. Cook's need for drug treatment.

The PSR writer considers Mr. Cook's inconsistent/incomplete statements about drug use and mental health as aggravating factors, but the undersigned counsel thinks just the opposite. While Mr. Cook may not think he has a need for drug treatment, his lack of insight into the value of drug treatment is very common in someone who *needs* drug treatment (i.e. denial). When reviewing Mr. Cook's criminal history, one must certainly question Mr. Cook's claim that "his use of controlled substances has not caused problems in his relationships, at home, work, or in school." PSR at ¶81. Mr. Cook's inability to appreciate how his drug abuse and mental health needs have affected him demonstrates how important treatment is to his rehabilitation. Drug treatment helps

open an addict's eyes to the effects and consequences of drug use on the user's life. Mr. Cook's need for drug treatment favors leniency and rehabilitation over punishment and prison.

Mr. Cook also has educational/vocational rehabilitative needs. While Mr. Cook graduated from high school, he has no post-high school training or education. Mr. Cook has never held a job for over a year. PSR at ¶¶ 85-88. Mr. Cook cited transportation issues and moving from Arizona to Wisconsin as reasons for leaving his brief employment stints. Mr. Cook was never fired for on-the-job bad behavior—just for absenteeism. Mr. Cook has positive and reasonable vocational goals – becoming an electrician. He admitted to wanting support to achieve his goal, and this vocational need for a young man should similarly favor rehabilitation over punishment.

Mr. Cook has accepted full responsibility for his actions. He made a timely plea in this case rather than proceed to trial, knowing he was agreeing to recommend no less than 3 years of prison. Through the undersigned counsel, he made a statement accepting responsibility for these actions without qualification or minimizing. Mr. Cook knows the danger of firearms in the community, as he was shot himself back in 2021. As the PSR writer indicates, Mr. Cook's acceptance of responsibility is a mitigating factor the Court may consider. PSR at ¶ 108.

II.      **Sentencing Guidelines and Seriousness of the Offense.**

The PSR recommends a Sentence Guideline imprisonment range for a total offense level of 22 and a criminal history category of V: 77 months to 96 months. The plea agreement requires Mr. Cook to recommend no less than 3 years imprisonment. _Mr. Cook is asking the court to impose no more than five years imprisonment_. This is 2 more years than the minimum he can ask for, but also 2-3 years less than the PSR recommended range.

Mr. Cooks' case resulted from two separate controlled buys orchestrated by the Milwaukee Area Safe Streets Task Force – Racine. The January 18, 2024, controlled buy was for a 9mm pistol.

Case 2:25-cr-00071-BHL     Filed 01/19/26     Page 4 of 6     Document 28

The June 19, 2024, controlled buy was for Oxycodone pills. The Defendant asks for leniency because both transactions were orchestrated by law enforcement—in other words, the actual risk to the community was less because neither the drugs nor the firearm were ever going into the community. Additionally, the Defendant was not part of a greater drug or firearm trafficking scheme. The Defendant knew the informant through an acquaintance—but the informant was a felon and presumably working with law enforcement to better position himself in his own legal matters. Mr. Cook does not have a history of drug or firearm trafficking—none of his prior convictions or charges stemmed from trafficking.

Mr. Cooks believes the Court should consider some leniency because the amount of fentanyl was much closer to 40 grams that 160 grams (53 grams). The next lower base offense level for 40 or less grams of fentanyl would be 22. USSG §2D1.1(c)(9). Accordingly, Mr. Cook's sentencing recommendation, five years imprisonment, more closely aligns with a total offense level of 20 (rather than 22).

The PSR sentence guideline range of 77-96 months depends much more on Mr. Cook's prior record than the total offense level. A person with limited or no criminal history would have a sentence guidelines recommendation much closer to 3 years. Here, too, if Mr. Cook's criminal history category was just one point less (9 instead of 10) he would have a sentence guideline range of 63-78 (just over 5 years on the low end). This is another reason why Mr. Cook has recommended a five-year prison sentence. He asks for leniency in reviewing his criminal history, given the short span of time in which it occurred combined with his young age and overall need for rehabilitation.

III.    **Protecting the Community and Rehabilitating the Defendant.**

The sentencing guideline range between 77-96 months' imprisonment is much more time than necessary to protect the public from Mr. Cook. Mr. Cook again recommends a departure to

5

five years' confinement. Mr. Cook was unable to complete the various terms of probation he began in his Wisconsin State cases. Now revoked, Mr. Cook is already serving a Wisconsin state prison sentence with a release date of March 22, 2027, and maximum discharge date of March 22, 2030. Here, protecting the community here depends less on punishing Mr. Cook and more upon *rehabilitating* Mr. Cook. A revocation summary report dated July 30, 2024, indicated Mr. Cook's top criminogenic needs were identified as associates and peers, substance use, society and routines, leisure and recreation, cognitive behavioral, socialization history and residential stability. He has a range of rehabilitative needs. Mr. Cooks therefore believes that his recommendation of five-years imprisonment is much more reasonable based on the above-mentioned factors and reasons.

## CONCLUSION

Mr. Cook understands that this Court must impose consequences for his illegal conduct, and he accepts that. What he respectfully requests from this Court is that it take into consideration all of the Section §3553(a) factors and impose a sentence sufficient, but not greater than necessary, to serve the purposes of sentencing in his case.

DATED, this 19th Day of January, 2026.

Respectfully submitted,

Brian P. Dimmer #1073944
Attorney for Deonte Cook
*RACINE DEFENSE*
308 Sixth Street
Racine, WI 53403
(262) 264-1623
bpd@racinedefense.com

cc: Honorable Brett H. Ludwig (E-filed & mailed)
AUSA Katherine M. Halopka-Ivery / Patricia Daugherty (E-filed)
Client (Hand-delivered)